UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELAINE M. PUSH,

          Plaintiff,         Civil Action No. 15-11867
                                   Honorable Victoria A. Roberts
                                   Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]**

Plaintiff Elaine M. Push ("Push") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Push is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Push's Motion for Summary Judgment [14] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.   REPORT

### A.   Procedural History

On May 21, 2012, Push filed an application for DIB, alleging a disability onset date of December 19, 2011. (Tr. 151-57). This application was denied initially on September 24, 2012. (Tr. 71-75). Push filed a timely request for an administrative hearing, which was held on November 5, 2013, before ALJ Paul Jones. (Tr. 27-58). Push, who was represented by Brian Christie (a non-attorney representative), testified at the hearing, as did vocational expert Zachary Matthews. (*Id.*). On November 15, 2013, the ALJ issued a written decision finding that Push is not disabled under the Act. (Tr. 14-22). On March 19, 2015, the Appeals Council denied review. (Tr. 1-5). Push timely filed for judicial review of the final decision on May 22, 2015. (Doc. #1).

### B.   Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

>   and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>   Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>   Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

   **C.   Background**

      *1.   Push's Reports and Testimony*

At the time of the administrative hearing, Push was 54 years old, and at 5'7" tall, weighed approximately 170 pounds.  (Tr. 30, 32).  She lived in a house with her husband and 18-year-old daughter.  (Tr. 30-31, 195).  Push testified that she dropped out of school in ninth grade after her mother committed suicide; however, she later earned her GED.  (Tr. 32-33).  Previously, she worked for more than 25 years for 3M, the last 15 years as an administrative assistant.  (Tr. 39, 57).  She stopped working on January 20, 2009, when her employer "got rid" of her because she was unable to work, but alleges disability beginning on December 19, 2011 (the date on which she tested positive for rheumatoid arthritis).  (Tr. 35, 37-38).  For the last four years she worked, Push took intermittent leave for her medical conditions.  (Tr. 180).

   Push alleges disability as a result of rheumatoid arthritis, fibromyalgia, ulcerative colitis, and irritable bowel syndrome ("IBS").  (Tr. 180).  She testified that she has "bad days" three or

3

four days a week – these are days during which the only thing she does is get up to go to the rest room. (Tr. 53). Most days it takes her 30-45 minutes "just to get walking," and she frequently tries to take naps during the day because she has difficulty sleeping at night due to "constant tingling and strange feelings going through [her] extremities …." (Tr. 47, 51-52). The medications she takes – Vicodin, Klonopin, and Enbrel – make it difficult for her to "think straight." (Tr. 47-48). She has difficulty picking up small objects. (Tr. 195).

Push indicated that she can sit for 45 minutes at a time. (Tr. 52). She has difficulty lifting her right (dominant) arm and cannot wash or dry her own hair (her daughter helps her with this). (Tr. 52-53). She has trouble attending to her own personal care (i.e., she cannot snap her own pants, shave her legs, or hold onto eating utensils). (Tr. 52, 196). She no longer performs any housework, such as doing the dishes, laundry, or vacuuming.[1] (Tr. 53). She goes to the grocery store once a week with a companion and uses a motorized cart. (Tr. 53-54). She is able to prepare meals (heating up frozen dinners). (Tr. 197). She is able to drive but does so infrequently; because she has difficulty turning her head to the right, she feels unsafe. (Tr. 54). She spends time talking on the phone with friends and family. (Tr. 199).

    2.    *Medical Evidence*

The Court has thoroughly reviewed Push's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

    3.    *Vocational Expert's Testimony*

Zachary Matthews testified as an independent vocational expert ("VE") at the

---

[1] In a June 19, 2012 Function Report, Push indicated that she could do "light housework," such as laundry. (Tr. 196). By the time of the administrative hearing in November 2013, however, Push testified that she could no longer perform these chores. (Tr. 53).

4

administrative hearing. (Tr. 45-47, 48-49). The ALJ asked the VE to imagine a hypothetical individual of Push's age, education, and work experience who can perform light work with the following additional limitations: only occasional climbing, stooping, kneeling, crouching, and crawling; frequent reaching with the dominant right upper extremity, handling of objects bilaterally, and fingering bilaterally; and no concentrated exposure to vibration or the non-weather-related extremes of cold. (Tr. 45-46). The VE testified that the hypothetical individual would be capable of performing Push's past relevant work as an administrative assistant. (Tr. 46). The VE further testified that the hypothetical individual would also be capable of working in the light, unskilled jobs of counter clerk (55,700 jobs nationally), information clerk (55,800 jobs), and board attendant (179,000 jobs). (Tr. 46-47).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Push has not engaged in substantial gainful activity since December 19, 2011 (the alleged onset date). (Tr. 16). At Step Two, the ALJ found that Push has the severe impairments of arthritis, fibromyalgia, IBS/colitis, right shoulder tenosynovitis, and spinal degenerative disc disease. (*Id.*). At Step Three, the ALJ found that Push's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then found that Push retains the residual functional capacity ("RFC") to perform light work with the following additional limitations: only occasional climbing, stooping, kneeling, crouching, and crawling; frequent reaching with the dominant right upper extremity, handling of objects bilaterally, and fingering bilaterally; and no concentrated exposure to vibration or the non-weather-related extremes of cold. (*Id.*).

At Step Four, the ALJ determined that Push is able to perform her past relevant work as

an administrative assistant. (Tr. 20). In the alternative, at Step Five, the ALJ concluded, based in part on the VE's testimony, that Push is capable of performing a significant number of jobs that exist in the national economy. (Tr. 21). As a result, the ALJ concluded that Push is not disabled under the Act. (*Id.*).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

*1.     The ALJ Properly Analyzed the Medical Opinions before Him[2]*

Although Push does not actually argue that remand is appropriate pursuant to sentence six of 42 U.S.C. §405(g), she relies heavily on the opinions of Dr. Dipak Patel and Dr. Dana Planer, both of which were submitted to the Appeals Council <u>after</u> the ALJ rendered his decision

---

[2] In her motion for summary judgment, Push argues that the ALJ improperly relied on the opinion of a single decision maker, Myung Ho Hahn, in formulating her RFC. (Doc. #14 at 19-20). After the Commissioner responded with evidence that this individual is in fact a physician (Doc. #15 at 12), Push abandoned this argument (Doc. #16 at 1-2).

in this case.³ (Tr. 4, 413-14). Specifically, on December 16, 2013 – one month after the ALJ's decision – Dr. Patel, Push's rheumatologist, wrote a letter in which he recounted Push's medications, noted that she had one hour of morning stiffness and gelling during the day, observed that she needed her husband and daughter to help with tasks at home, and opined that she was "unable to work due to her symptoms." (Tr. 413). Later that month, Dr. Planer, one of Push's primary care physicians, wrote a letter in which she recounted Push's diagnoses, signs, and symptoms; observed that the symptoms were "pervasive and affect all aspects of daily living"; and opined that Push "meets criteria for disability." (Tr. 414).

Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Here, the medical opinions at issue are dated December 16, 2013, and December 29, 2013. (Tr. 413-14). Thus, they can be considered "new" evidence, as they did not exist at the time of the ALJ's November 15, 2013 decision. However, even if Push could establish "good cause" for her failure to submit these records sooner,⁴ she has not demonstrated that they are "material."

---

³ Push criticizes the ALJ for failing to "even mention [] these opinions" (Doc. #14 at 22), but the ALJ could not possibly have mentioned these medical opinions as they did not exist at the time he issued his decision.

⁴ "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this Court has recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27, 2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's

8

Courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). In this case, Push has not articulated how either Dr. Patel's or Dr. Planer's opinion is "material" under these standards. Indeed, both opinions ultimately concluded only that Push was "unable to work" and met the "criteria for disability" (Tr. 413-14), but such conclusions on the ultimate issue of disability are reserved to the ALJ. *See* 20 C.F.R. §404.1527(d); *see also Duehring v. Comm'r of Soc. Sec.*, 2016 WL 865844, at *4 (E.D. Mich. Mar. 7, 2016) ("the ultimate disability determination is an issue reserved for the Commissioner; even if a doctor had opined that Plaintiff was disabled, such an opinion would be afforded no deference."). Neither letter provided a medical opinion as to Push's specific functional limitations; rather, each merely recounted her diagnoses, medication, reported symptoms, and allegations of needing her daughter and husband to help her with tasks at home, all of which the ALJ had already considered. (Tr. 17-20, 413-14). And, notably, the ALJ did consider a July 2012 opinion from Dr. Patel, in which he indicated that Push had 30-45 minutes of stiffness every morning and gelling during the day, but improved with prednisone, an observation that is very similar to his December 2013 letter (indicating an hour of stiffness in the morning and gelling during the day, but improvement with prednisone). (Tr. 19, 297-98, 413). Thus, neither Dr. Patel's nor Dr. Planer's letter can be considered "material," because Push has not shown a

---

decision." *Richardson*, 2012 WL 4210619, at *4. Here, Push has not offered *any* explanation for why she did not obtain these opinions prior to the ALJ's decision. Rather, in her reply brief, she acknowledges that "they should have [been] obtained before the hearing," and indicates only that she does not know why her prior counsel failed to do so. (Doc. #16 at 5). However, courts have recognized that "[m]istakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six." *Jackson v. Comm'r of Soc. Sec.*, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6. 2009) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996)).

reasonable probability that the Commissioner would have found her disabled if presented with this additional evidence. Accordingly, Push is not entitled to a sentence six remand.

> 2. *Substantial Evidence Supports the ALJ's Credibility Analysis*

Push also challenges the ALJ's determination that her complaints were not fully credible. (Doc. #14 at 23-25). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

In this case, after finding at Step Two that Push suffers from the severe impairments of arthritis, fibromyalgia, IBS/colitis, right shoulder tenosynovitis, and spinal degenerative disc disease (Tr. 16), the ALJ concluded that she nevertheless retains the residual functional capacity to perform a reduced range of light work (Tr. 16-20). In reaching this conclusion, the ALJ

10

specifically referenced Push's testimony that she has difficulty sleeping, attending to her own personal care, using her hands, lifting her arms above her head, sitting for prolonged periods of time, walking, and climbing stairs. (Tr. 17). However, the ALJ found that while Push's conditions could reasonably be expected to produce the alleged symptoms, her statements about the intensity, persistence and limiting effects of those symptoms were not entirely credible to the extent they conflicted with the RFC assessment. (Tr. 17-20). In reaching this conclusion, the ALJ specifically considered the relevant medical evidence, Push's response to medications, and her activities of daily living, and he gave good reasons for discrediting Push's allegations of work-preclusive limitations. (*Id.*).

As an initial matter, the ALJ properly considered the objective medical evidence when evaluating Push's credibility. Specifically, the ALJ noted that, in February 2012, Push presented to Dr. Robert Ikeman for a rheumatology consultation, complaining of joint pain primarily in her hands and wrists. (Tr. 17, 260-62). Dr. Ikeman ordered x-rays of her hands and wrists (which were normal), and a subsequent MRI of the right hand did not show any significant abnormalities. (Tr. 266-67). At a follow-up visit in March 2012, Push reported no overall change in her "general aches and pains," saying that she still suffered about thirty minutes of morning stiffness in her wrists and hands. (Tr. 258). Dr. Ikeman indicated a belief that she had inflammatory arthritis and suggested a trial of Humira. (Tr. 259).

On April 26, 2012, Push saw Dr. Dana Planer, her primary care physician in Florida. (Tr. 224-26). Dr. Planer noted that Push was being treated for rheumatoid arthritis, ulcerative colitis, and fibromyalgia, among other conditions. (Tr. 224). On examination, Dr. Planer found multiple tender points in a pattern consistent with fibromyalgia, and noted that both of Push's

11

hands had arthritic changes. (*Id.*). Dr. Planer further noted that Push had only recently started Humira and was hopeful that this medication would offer her some relief. (Tr. 225).

After returning to Michigan for the summer, Push saw Dr. Carla Bregni-Page on June 25, 2012. (Tr. 271). Dr. Bregni-Page noted that Push was tolerating Humira well and referred her to the rheumatology department at the University of Michigan Medical Center. (*Id.*). As the ALJ noted, on July 2, 2012, Push presented to Dr. Dipak Patel, a rheumatologist at the University of Michigan. (Tr. 19, 297-99). He noted that Push had developed pain, stiffness, and swelling in multiple joints three years earlier. (Tr. 297). Her hands, wrists, shoulders, knees, ankles, and feet were the most affected. (*Id.*). Dr. Patel then noted that x-rays did not show inflammatory features, but an MRI detected a cyst and supraspinus tendonopathy in her right shoulder. (*Id.*). Push reported 30-45 minutes of stiffness every morning, as well as gelling during the day, but indicated that her symptoms improved with prednisone. (*Id.*). Dr. Patel also reviewed prior notes and recounted that Push's IBS symptoms were worsened by stress and relieved by Levsin, Klonopin, and fiber. (*Id.*). On examination, Push had moderate bogginess and tenderness in multiple bilateral proximal interphalangeal (PIP) and distal interphalangeal (DIP) joints without redness or limited range of motion. (Tr. 298). Her metacarpophalangeal (MCP) joints were unremarkable, as were her wrists, elbows, shoulders, hips, knees, ankles, and feet. (*Id.*). At a follow-up visit to Dr. Patel on August 30, 2012, Push continued to report one hour of morning stiffness, despite taking Humira and prednisone. (Tr. 302). The frequency of her Humira dose was increased and her diagnosis remained seropositive rheumatoid arthritis. (*Id.*).

The ALJ also considered the September 2012 opinion of state agency physician Myung Ho Hahn, who reviewed the record and concluded that Push was capable of performing light work, with additional limitations (including a limitation to frequent fingering). (Tr. 20, 60-69).

In addition, the ALJ evaluated a letter from Dr. Bregni-Page, dated July 22, 2013, in which she indicated that Push has "multiple medical conditions [] which cause her ongoing pain and disabilities." (Tr. 20-21, 410). Importantly, she indicated that Push's IBS and ulcerative colitis, which were first diagnosed in 1999, were "under control with proper diet and stress management." (*Id.*). She also indicated that Push had fibromyalgia, which caused chronic pain; neck and lower back pain; rheumatological arthritis; and an anxiety disorder.[5] (*Id.*).

In attacking the ALJ's credibility assessment, Push argues that the ALJ "said nothing" about her ulcerative colitis, IBS, and other gastrointestinal maladies. (Doc. #14 at 23). This is incorrect, however, as the ALJ specifically found these conditions to be severe impairments. (Tr. 16). Push then argues that the ALJ erred in failing to include limitations in her RFC related to these conditions. (Doc. #14 at 23-24). But, the ALJ explicitly considered Push's history of gastrointestinal bleeding, abdominal pain, diarrhea, nausea, vomiting, and development of anemia, along with her diagnoses of IBS and ulcerative colitis. (Tr. 18). He further observed that these impairments caused limitation of function and indicated that he considered "any added or accumulative effects [Push's] disorders played on her ability to function, and to perform routine movement and necessary physical activity within the work environment." (*Id.*). The ALJ further noted that Dr. Bregni-Page specifically indicated that Push's IBS and ulcerative colitis symptoms were under control with proper diet and stress management. (Tr. 19, 410). Thus, where the ALJ explicitly indicated that he considered the limitations imposed by these conditions, and where the medical evidence indicates that these conditions were under control, the Court finds no error in the ALJ's decision to decline to include specific restroom-related

---

[5] In her reply brief, Push asserts that the ALJ erred in giving "little weight" to Dr. Bregni-Page's "opinion." (Doc. #16 at 1-2). As the ALJ noted, however, Dr. Bregni-Page did not actually offer an opinion as to Push's functional limitations; rather, she merely stated that Push was seeking permanent disability due to her ongoing degenerative conditions. (Tr. 20, 410).

13

restrictions in Push's RFC. *See, e.g., Garcia v. Colvin*, 2015 WL 5719652, at *4-5 (D. Colo. Sept. 30, 2015) (ALJ not required to provide for restroom access in RFC where evidence suggested ulcerative colitis was "more or less under control" and did not otherwise suggest restroom access needs would materially impact RFC).

In addition, in assessing the credibility of Push's allegations, the ALJ noted that, despite her allegations of disabling symptoms, she engaged in extensive daily activities. (Tr. 19). Specifically, the ALJ noted that Push was able to care for her pets, perform some household chores, prepare meals, use a computer, go shopping, read, watch television, handle money, take care of her personal needs, take her medication, go out alone, drive, and socialize. (Tr. 19, 196-99). The ALJ further noted that she was able to follow instructions, pay attention, finish what she started, handle changes in routine, and travel between Michigan and Florida. (Tr. 19, 200-01, 298). It was entirely appropriate for the ALJ to consider the fact that Push's ability to perform daily activities was less limited than one would expect, given her allegations of disabling symptoms. *See Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the credibility of the claimant's allegations of disabling symptoms).

Push argues that the ALJ "misrepresented her testimony" in evaluating her activities of daily living, claiming that he inaccurately described her as independent in her activities when in reality she required assistance. (Doc. #14 at 25). But, the ALJ reasonably relied on Push's own reports and testimony; it is true that, while she did allege needing some help and having some difficulties, she also admitted being able to perform many activities independently. (Tr. 197-200). It was both reasonable and appropriate for the ALJ to resolve any conflict that existed in Push's accounts of her daily activities. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (noting that "the Commissioner has the power and discretion to weigh all of

the evidence and to resolve the significant conflicts in the administrative record"). Consequently, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

### 3. *Push's Remaining Arguments are Without Merit*

Push raises a few other arguments, albeit briefly, which are discussed below. First, she claims that the ALJ "made numerous odd remarks" at the administrative hearing, asking her strange questions about her alleged onset date and the date of her last medical appointment. (Doc. #14 at 24). As the Commissioner correctly points out, however, Push had the burden of establishing her onset date. (Doc. #15 at 16 (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)). Moreover, as the factfinder, the ALJ was required to evaluate Push's alleged onset date and determine whether the medical records are up to date, so the Court finds no error in the ALJ's questioning regarding these matters.

Push also argues that the ALJ erred in failing to account for the hand limitations assessed by Dr. Ikeman and Dr. Patel and in therefore concluding that she could frequently handle objects. (Doc. #14 at 26). Dr. Ikeman did discuss Push's difficulty with her hands, including numbness, tenderness, and dropping objects, but he also noted that x-rays of her hands were normal. (Tr. 260-62). Similarly, Dr. Patel indicated that Push would have difficulties with fine activities, such as fastening buttons on clothes, and observed bogginess and tenderness, but found no redness or limited range of motion in her PIP or DIP joints. (Tr. 297). Dr. Hahn reviewed all of this evidence and concluded that Push was capable of frequent handling and fingering (Tr. 63-66). The ALJ then gave great weight to Dr. Hahn's opinion and incorporated this limitation into

Push's RFC assessment (Tr. 16, 20). Push has simply failed to demonstrate error in the ALJ's analysis of the relevant medical evidence and opinions.[6]

In sum, based on the above analysis and the Court's detailed review of the record, it finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[15]** be **GRANTED**, Push's Motion for Summary Judgment **[14]** be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: March 30, 2016                           s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

---

[6] Push also mentions that attorney William Christie did not actually appear at her hearing, and that instead his son (a non-attorney representative) appeared on her behalf, but she does not develop this observation into an argument in her motion for summary judgment. (Doc. #14 at 18). Similarly, she suggests that the ALJ was not a "neutral fact-finder" (Doc. #16 at 6), but aside from referring to the purportedly "strange questioning" discussed above (regarding her onset date and medical records), she does not further develop this argument. The Court finds both of these arguments waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2016.

          s/Eddrey O. Butts
          EDDREY O. BUTTS
          Case Manager